UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK GARRAWAY,

        Plaintiff,

                                        DECISION AND ORDER
    -v-                              12-CV-0924S(M)

T. GRIFFIN, Superintendent; SHEAHAN, D.S.S. (A-Supt.);
WATCH COMMANDER, JOHN/JANE DOES;
SERGEANT JOHN DOE(S), #1 and #2;
CORRECTIONAL OFFICERS JOHN DOE(S),
Escorting Officers #1 and #2, Gallery Officers #1 and #2;
MEDICAL STAFF and DEPARTMENT NURSES, JOHN and JANE DOES;
S. SMITH, Laundry Supervisor; and
MAIL ROOM SUPERVISOR and STAFF, JANE DOES,

        Defendants.

---

## INTRODUCTION

Plaintiff, an inmate at the Southport Correctional Facility, has filed this *pro se* action under 42 U.S.C. § 1983 (Docket No. 1), and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket No. 2). Plaintiff claims that the defendants, various unidentified John and Jane Doe Correctional Officers/Sergeants and Mail and Medical Staff personnel, S. Smith, Laundry Room Supervisor, Griffin, Superintendent, Sheahan, Deputy Superintendent for Security, John Doe, Acting Superintendent, and John Doe and Jane Doe Watch Commander violated his rights under the Eighth Amendment to the United States Constitution when they failed to arrange for plaintiff to be provided with a new mattress. The mattress in plaintiff's new cell where he had been moved to on or about June 27, 2011, had been soiled with urine and feces during an altercation in said cell that had occurred just prior to plaintiff's transfer to the cell. Plaintiff

alleges that he asked the defendants either orally or in writing on numerous occasions to obtain a new mattress for him and they either advised him to notify someone else, which he claims he did, or that they would arrange for a new mattress to be provided. He claims that he was exposed to a "pathogen" and that this caused him to require medical attention, threatened his physical and mental well-being and caused undue stress, sleep deprivation and exposure to egregious physical conditions. Plaintiff never received a new mattress prior to the time he was transferred in October 2011, and in one of the grievances attached to the complaint he notes that in or around September 2011, he developed a skin fungus as a result of the unsanitary mattress.

Plaintiff also claims that between June 17 and November 25, 2011, his mail was interfered with and that this caused him to be exposed to a pathogen on the mattress because his correspondence was not forwarded to the Laundry Supervisor which led to him being denied a mattress exchange.

For the reasons discussed below, plaintiff's request to proceed as a poor person is granted, his mail interference claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and service by the U.S. Marshals is ordered with respect to the remaining Eighth Amendment claims. Moreover, the New York State Attorney General's Office is requested to attempt to ascertain the names and addresses for service of the John Doe defendants plaintiff seeks to sue herein and that for those John Doe defendants that cannot be identified plaintiff will be provided the opportunity to learn the identity of those John Doe defendants through discovery and, if identified, move to amend the caption to name the John Doe defendants and have them served.

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*. Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon,* 480 F.3d 636, 639 (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999) (*per curiam* )).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400,

3

405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). Based on its evaluation of the complaint, the Court finds that plaintiff's mail interference claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because they fail to state a claim upon which relief may be granted.

### A. PLAINTIFF'S CLAIMS

As noted, plaintiff alleges that in late June 2011, he was moved to A-Block, 3-Gallery, 6-cell and was advised by John Does Escorting Correctional Officers #1 and #2 that the cell had just been the scene of a "horrendous feces and urine fight" between the cell's previous occupant and another inmate. As a result, "remnants" of the fight still remained on the mattress, and the cell's gates and walls. Plaintiff asked the two Escorting Officers for a mattress exchange and they advised him to speak to the Gallery Officer. (Complaint, First Claim.) Plaintiff asked John Doe Gallery Officer #1 for a mattress exchanged several times on June 27-29, 2011, and he asked the same of John Doe Gallery Officer #2 on June 30-July 1, 2011. Both Officers claimed that they would look into getting plaintiff another mattress but they never did. (*Id.*, Second and Third Claims.) On July 3, 7-8, 2011, plaintiff asked John Does Sergeant #1 and #2(A.M. Sergeants) for a mattress exchange. John Doe Sergeant #1 advised him to write to either the "State Shop" or Laundry to get a new mattress, and John Doe Sergeant #2 assured plaintiff that he would look into obtaining a new mattress but he never did. (*Id.*, Fourth and Fifth Claims.)

Plaintiff further alleges that from July 3-October 16, 2011, he made numerous verbal and written requests to S. Smith, Laundry Room Supervisor, for a mattress exchange but never obtained a new mattress even after he was diagnosed with a skin fungus,. (*Id.*, Sixth Claim.) Between June 17 and November 25, 2011, plaintiff alleges that John Doe Mail Room Supervisor and Jane Doe(s)

Mail Room Staff interfered with plaintiff's correspondence with the Laundry Room Supervisor regarding his requests for a mattress exchange. (*Id.*, Seventh Claim.)

Plaintiff also alleges that between September 30 and October 16, 2011, John and Jane Does Medical Staff, Nurses and Facility Health Services Director, did not have plaintiff's mattress inspected and exchanged after plaintiff was diagnosed with contracting a "irritating pathogen." (*Id.*, Eighth Claim.) From June 2011-October 16, 2011, plaintiff alleges that John and Jane Doe(s) Watch Commander caused him to contract an irritating pathogen by not having the cell's mattress confiscated or exchanged despite notice of the fight that had occurred in plaintiff's cell prior to plaintiff's transfer to said cell. (*Id.*, Ninth Claim.) Lastly, plaintiff alleges that Superintendent Griffin, Deputy Superintendent Sheahan and John Doe Acting Superintendent denied plaintiff a mattress exchange and interfered with his right to receive and send mail by "allowing and/or encouraging, exacerbating and/or ignoring plaintiff's complaints" that the Mail Room was interfering with his mail, which caused plaintiff to contract a pathogen. The denial of a mattress continued even after the medical department had informed Sheahan of plaintiff's "pressing situation." (*Id.*, Tenth and Eleventh Claims.)

Plaintiff alleges that the defendants' actions or inactions deprived him of basic human needs and exposed him to health risks by forcing him to be exposed to an unsanitary mattress which caused him to contract a "pathogen"--a "skin fungus" (Complaint, Exhibit, Inmate Grievance Complaint, dated October 12, 2011),[1] which required medical attention, threatened his physical and mental well-being, caused undue stress, sleep deprivation and exposure to unsanitary conditions.

---

[1] *See Chance v. Armstrong*, 143 F.3d 698, 698 n.1 (2d Cir. 1998) ("the court may consider facts set forth in exhibits attached as part of the complaint as well as those in the formal complaint itself"); *see Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

For the reasons set forth below, plaintiff's First Amendment interference with mail claim is dismissed for failure to state a claim upon which relief can be granted but the Eighth Amendment claims related to the denial of a mattress exchange and the provision of a sanitary mattress may proceed at this time against the remaining defendants. See Bell v. Luna, 856 F.Supp.2d 388, 398 (D.Conn. 2012) ("Given courts' frequent inclusion of adequate and sanitary mattresses as part of the 'minimal civilized measure of life's necessities,' this Court is unwilling to say as a matter of law that it is not cruel and unusual punishment for prison officials to allow an inmate to go nearly seven months with a torn, unstuffed, unhygienic mattress.") (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); and citing *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir.2001) ("We are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end.").[2]

**Mail Interference**

The complaint alleges that the Mail Room somehow interfered with or prevented plaintiff's mail from being forwarded to the Laundry Room, which thus prevented him from obtaining a mattress exchange. (Complaint, Seventh Claim.) Some of the grievances attached to the complaint, however, include complaints about interference with legal mail, the denial of free postage and a delay in processing of a piece of mail, none of which is alleged in the complaint. In either event, this

---

[2] *See McEachin v. McGuiniss*, 357 F.3d 197, 200 (2d Cir. 2004) ("We have frequently reiterated that '[s]ua *sponte* dismissals of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.' ") (quoting *Moorish Sci. Temple of Am. Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir.1998) (per curiam) (We also have held that, when reviewing pro se submissions, a district court should look at them "with a lenient eye, allowing borderline cases to proceed.") (internal quotation marks omitted); *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*) ("*Sua sponte* dismissal of a *pro se* complaint prior to service of process is a draconian device, which is warranted only when the complaint lacks an arguable basis in law or fact. Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer.") (citations and internal quotations omitted)).

6

claim, whether it is construed as an interference with personal mail claim or an interference with legal mail claim and thus a denial of access to the courts claim, *see Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (citation, internal quotation marks and emphasis omitted), it must be dismissed for failure to state a claim upon which relief can be granted.

Interference with a prisoner's legal mail implicates both a First Amendment right to access to the courts and free speech. In order to state a claim of a denial of access to the courts due to interference with legal mail, a prisoner must allege that the defendant "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir.1997) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *see also Cancel v. Goord*, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.") (citing *Lewis*, 518 U.S. at 353). To the extent plaintiff raises a First Amendment denial of access to courts claim it must be dismissed because there are no allegations that defendants' alleged interference with him mail resulted in an actual injury or hindered a valid legal claim in any way.

An inmate also has a First Amendment right to the free flow of their mail, both incoming and outgoing. *Procunier v. Martinez*, 416 U.S. 396 (1974); *Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003); *Heimerle v. Attorney General*, 753 F.2d 10 (2d Cir.1985); *France v. Coughlin*, 1987 WL 10724 (S.D.N.Y.1987). In order to accommodate this right, prison regulations restricting inmate mail must

be reasonably related to prison interests in security and order, *Procunier v. Martinez*, 416 U.S. at 412; *Heimerle*, 753 F.2d at 12; *see also Davidson v. Scully*, 694 F.2d 50 (2d Cir.1982); *Wolfish v. Levi*, 573 F.2d 118 (2d Cir.1978), *rev'd in part on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979). "Although prisoners' First Amendment mail claims are often intertwined with claims for denial of court access, they may exist separately." *Moore v. Gardner*, 199 F.Supp.2d 17, 33 (W.D.N.Y.2002).

"[I]n order for an inmate to state a claim for interference with incoming non-legal mail he must show a pattern and practice of interference that is not justified by any legitimate penological concern." *Cancel*, 2001 WL 303713, *6 (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir.1999). Regulations limiting a prisoner's right to send and receive non-legal mail " '[are] valid if [they are] reasonably related to legitimate penological interests.'" *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir.1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Plaintiff's free flow of non-legal mail claim must be dismissed because the allegations fall far short of alleging any type of pattern or practice of mail interference. Conclusory allegations that plaintiff's mail to the Laundry Room was intercepted and that this caused him to contract a skin fungus are simply insufficient to state an actionable First Amendment claim.

Accordingly, the Seventh Claim in its entirety and those parts of the Tenth and Eleventh Claims alleging that Superintendent Griffin, Deputy Superintendent Sheahan and John Doe Acting Superintendent were responsible for the alleged mail interference are dismissed with prejudice.

## CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby

granted. For the reasons discussed above, plaintiff's Seventh Claim in its entirety and those parts of the Tenth and Eleventh Claims alleging that Superintendent Griffin, Deputy Superintendent Sheahan and John Doe Acting Superintendent were responsible for the mail interference are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A, and the U.S. Marshal is directed to serve the summons and complaint on T. Griffin, Superintendent, Sheahan, Deputy Superintendent, and S. Smith, Laundry Room Supervisor, regarding the remaining Eighth Amendment Claims.

Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997)(per curiam), the Court requests that the New York State Attorney General's Office attempt to ascertain the full names of the John Doe defendants plaintiff seeks to sue herein. The Attorney General's Office is also requested, to the extent if its able to identify some or all of the John Doe defendants, to provide the addresses where the defendants so identified can currently be served. The Attorney General's Office need not undertake to defend or indemnify these individuals at this juncture. This order merely provides a means by which plaintiff may name and properly serve the defendants as instructed by the Second Circuit in *Valentin*.

The New York State Attorney General's Office is hereby requested to produce the information specified above regarding the identities of the John Doe defendants by **May 20, 2013**. Once this information is provided, plaintiff's complaint shall be deemed amended to reflect the full names of the John Doe defendants identified, summonses shall be issued and the Court shall direct service on the defendants.

To the extent that the some of the John Doe defendants cannot be identified, plaintiff will be provided the opportunity to learn the identity of those John Doe defendants through discovery and, if identified, move to amend the caption to name those John Doe defendants and have them served.

## ORDER

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted, and his motions for counsel and discovery (Docket Nos. 3 and 4) are denied without prejudice as premature;

FURTHER, that plaintiff's Seventh Claim in its entirety and those parts of the Tenth and Eleventh Claims alleging that Superintendent Griffin, Deputy Superintendent Sheahan and John Doe Acting Superintendent were responsible for the mail interference are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate defendants Mail Room Supervisor and Staff, Jane Does, as parties to this action;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon T. Griffin, Superintendent, Sheahan, Deputy Superintendent, and S. Smith, Laundry Room Supervisor, without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;[3]

FURTHER, that the New York State Attorney General's Office is hereby requested to produce the information specified above regarding the identities of the John Doe defendants by **June**

---

[3] Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed.R.Civ.P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.

12, 2013. Once this information is provided, plaintiff's complaint shall be deemed amended to reflect the full names of the John Doe defendants identified, summonses shall be issued and the Court shall direct service on the defendants;

FURTHER, that to the extent that the some of the John Doe defendants cannot be identified, plaintiff will be provided the opportunity to learn the identity of those John Doe defendants through discovery and, if identified, move to amend the caption to name those John Doe defendants and have them served;

FURTHER, the Clerk of the Court is directed to forward a copy of this Order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>; and

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to respond to the complaint.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

DATED: May 8, 2013
Rochester, New York