UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK GARRAWAY,

              Plaintiff,
v.

SHARON SMITH, GARY BELZ, ROBERT PULSIFER,
MATTHEW SHUMAKER, JAMES EDGER,
CARLETON BRINK, and DAVID ERWAY,

              Defendants.

**DECISION AND ORDER**
12-CV-924S

## I. INTRODUCTION

In this action, Mark Garraway, a prisoner currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that Defendants, all of whom are DOCCS employees, violated his Eighth Amendment rights by housing him in a cell with an excrement-soiled mattress.

Trial is scheduled to begin on March 17, 2020. Now pending before this Court are the parties' motions in limine. (Docket Nos. 134, 135.) For the reasons stated below, that portion of Defendants' motion seeking dismissal of this case in its entirety is granted, and Garraway's motion is denied as moot.

## II. BACKGROUND

Garraway commenced this action pro se on October 1, 2012, by filing a complaint in the United States District Court for the Western District of New York. (Docket No. 1.) Because the court granted Garraway *in forma pauperis* status, it screened his complaint

1

as required under 28 U.S.C. §§ 1915 (e)(2)(B) and 1915A (a). (Docket No. 5.[1]) Upon screening, the court determined that Garraway adequately stated Eighth Amendment claims against a variety of John Doe defendants relating to the condition of his mattress but dismissed his First Amendment claims concerning mail tampering. Id.

On November 20, 2013, Garraway filed an amended complaint identifying the John Doe defendants. (Docket No. 16.) The first five causes of action alleged Eighth Amendment conditions-of-confinement claims against Defendants Shumaker and Edger (Claim 1), Brink (Claim 2), Erway (Claim 3), Belz (Claim 4), and Pulsifer (Claim 5) based on Garraway's allegations that they knew of the need to replace his excrement-soiled mattress but took no action to do so. The sixth cause of action alleged a similar Eighth Amendment claim against Defendant Smith, the laundry supervisor, for her failure to respond to Garraway's request for a new mattress. The seventh cause of action, and parts of the tenth and eleventh causes of action, repeated Garraway's previously-dismissed First Amendment claims and were therefore separately dismissed on June 6, 2014. (Docket No. 30.) The eighth cause of action alleged Eighth Amendment failure-to-provide-medical-treatment claims against certain medical defendants. The ninth, tenth, and eleventh claims sought supervisory liability.

After discovery, Defendants moved for summary judgment to dismiss the entire case, which this Court granted on March 31, 2016. (Docket Nos. 47, 60.) As it related to Garraway's Eighth Amendment condition-of-confinement claims (Claims 1-6), this Court found insufficient evidence from which a reasonable jury could find that any of the

---

1 Reported at Garraway v. Griffin, No. 12-CV-924S (M), 2013 WL 2105903 (W.D.N.Y. May 8, 2013) (Larimer, J.).

named defendants acted with a sufficiently culpable state of mind to sustain the subjective prong of an Eighth Amendment claim. Rather, this Court found that, at best, only negligence could be found. This Court further found that Defendants were entitled to summary judgment on Garraway's medical-treatment and supervisory liability claims (Claims 8-11).

Garraway timely appealed to the United States Court of Appeals for the Second Circuit, which affirmed in part, vacated in part, and remanded by way of a Summary Order dated August 31, 2017. (Docket No. 65.[2]) The Second Circuit affirmed this Court's dismissal of Garraway's medical-treatment and supervisory liability claims, but vacated its determination as to Garraway's Eighth Amendment conditions-of-confinement claims. In particular, the court found that issues of fact exist concerning whether the defendants exhibited more than mere negligence in failing to address Garraway's complaints about his mattress. The court also remanded for further consideration of whether Garraway raised an independent due process or Eighth Amendment claim premised on sleep deprivation, which this Court subsequently resolved by finding that Garraway's sleep-deprivation allegations are subsumed in his existing conditions-of-confinement claims. (Docket No. 96.[3])

Due to the nature of its summary judgment decision, which focused on the subjective prong of Garraway's Eighth Amendment claims, this Court did not fully address Defendants' exhaustion arguments. It found only that Garraway was not required to

---

2 Reported at Garraway v. Griffin, 707 Fed.App'x 16 (2d Cir. 2017) (summary order).

3 Reported at Garraway v. Smith, 12-CV-924S, 2019 WL 2135479 (W.D.N.Y. May 16, 2019).

3

name a specific individual in his October 4, 2011 grievance—he names only "the State Shop & Laundry"—and that there was no merit to Garraway's claim that he failed to file grievances against Defendants Shumaker, Edger, Brink, Erway, Belz, and Pulsifer because he feared retaliation. (Docket No. 60.) And because exhaustion was not the basis for this Court's grant of summary judgment, the Second Circuit did not consider any exhaustion issues.

After this case returned on remand, this Court appointed pro bono counsel to represent Garraway at trial.[4] (Docket No. 82.) The parties then engaged in additional discovery and mediation. When mediation proved unsuccessful, this Court scheduled trial for March 17, 2020, and issued a Pretrial Order. (Docket Nos. 109, 120.) Pursuant to that order, the parties filed their now-pending motions in limine, which raise substantive and evidentiary issues. (Docket Nos. 134, 135.)

### III. DISCUSSION

In their motion in limine, Defendants seek dismissal of the remaining claims in this action (Claims 1-6) on the grounds that Garraway failed to properly exhaust his administrative remedies. Plaintiff argues that he timely filed his grievance dated October 4, 2011, and did not file any earlier grievances because he feared retaliation. Because the undisputed record demonstrates that Garraway failed to satisfy this threshold requirement, this Court finds that Defendants' pretrial request to dismiss all remaining claims on exhaustion grounds must be granted. This moots the other aspects of the parties' motions in limine.

---

4 This Court recognizes pro bono counsel for her work in this case.

To succeed on his Eighth Amendment conditions-of-confinement claims, Garraway would have to establish that (1) objectively, the alleged deprivation was sufficiently serious such that he was denied the minimal measure of life's necessities,[5] and (2) subjectively, that Defendants acted with deliberate indifference to his health and safety. See Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). But first, Garraway must establish that he properly exhausted his administrative remedies as to each claim against each defendant. See 42 U.S.C. § 1997e (a).

**A. The Second Circuit's decision does not bar consideration of Defendants' exhaustion arguments.**

In considering Defendants' present exhaustion arguments, this Court is mindful of the Second Circuit's previous decision in this case. As noted above, the Second Circuit focused on whether Garraway had presented sufficient evidence as to the objective and subjective components of his Eighth Amendment claims, because that was the basis of this Court's summary judgment decision. It did not consider exhaustion.

As to the objective component, the Second Circuit found that Garraway had adduced sufficient evidence to establish a genuine dispute of material fact as to whether he suffered a sufficiently serious deprivation in the form of "his own statements and notes he purportedly wrote in July 2011 complaining about his mattress." Garraway v. Griffin, 707 Fed.App'x 16, 18 (2d Cir. 2017) (summary order). But for exhaustion purposes, which again the Second Circuit did not address, this fact issue is not preclusive. As will be discussed below, even assuming that Garraway made statements and wrote notes to

---

[5] Exposure to human waste can meet the objective element depending on "both the duration and the severity of the exposure." Willey v. Kirkpatrick, 801 F.3d 51, 68 (2d Cir. 2015).

the Defendants in July 2011 complaining about his mattress, his claims are subject to dismissal because he did not file grievances against Defendants Shumaker, Edger, Brink, Erway, Belz, or Pulsifer, nor did he timely file a grievance against Defendant Smith as to the letter he allegedly sent her in July 2011.

As to the subjective component, the Second Circuit found that Garraway presented sufficient evidence that the Defendants acted with a sufficiently culpable state of mind—more than mere negligence. Id. at 19. In so finding, the court found that issues of fact exist concerning whether and when Garraway complained about his mattress and whether Garraway's October 2011 grievance prompted action in two days or longer. Id. But again, these findings do not relate to exhaustion. Even assuming that the identified issues would all be resolved in Garraway's favor, it nonetheless remains that he failed to properly exhaust his administrative remedies, as discussed below.

Consequently, because exhaustion of administrative remedies was not before the Second Circuit, its decision does not bar the exhaustion-related dismissal Defendants now seek.

**B. Exhaustion under the Prison Litigation Reform Act of 1996**

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a); see also Woodford v.

Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d (2006) ("Exhaustion is . . . mandatory. Prisoners must now exhaust all 'available' remedies[.]"); Hargrove v. Riley, No. 04–CV–4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

In the event the defendant establishes that the inmate plaintiff failed to fully complete the administrative review process before commencing the action, the plaintiff's complaint is subject to dismissal. See Pettus v. McCoy, No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006); see also Woodford, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." Woodford, 548 U.S. at 95; accord Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007). This includes compliance with an agency's deadlines. Id. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

In New York, formal exhaustion of administrative remedies for prison inmates requires compliance with a detailed three-step grievance and appeal procedure. See Morrison v. Parmele, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012) (citing 7 N.Y.C.R.R. §

7

701.5)). The grievance process outlined at § 701.5 provides that: (1) the inmate must submit a written complaint to the Grievance Clerk within 21 calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal with the IGP clerk; (3) after the superintendent issues a decision, the inmate may appeal to the Central Office Review Committee ("CORC"), which makes the final administrative determination. See Thousand v. Corrigan, 9:15-CV-01025 (MAD/ATB), 2017 WL 1093275, at *3 (N.D.N.Y. Mar. 23, 2017); Turner v. Goord, 376 F. Supp. 2d 321, 323 (W.D.N.Y. 2005). "A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." Hairston v. LaMarche, Case No.05 Civ. 6642, 2006 WL 2309592, at *7 (S.D.N.Y. Aug.10, 2006) (citing cases). If all three levels of review are exhausted, the prisoner may seek relief in federal court under § 1983. See Thousand, 2017 WL 1093275, at *3; Bridgeforth v. DSP Bartlett, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010).

While the Supreme Court has deemed the exhaustion of administrative remedies generally mandatory, it has held that a prisoner's duty to exhaust is limited to "available" administrative remedies.[6] Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"). "An

---

[6] With this holding, the Court in Ross rejected the Second Circuit's "extra-textual" exception to the exhaustion requirement, which allowed courts to consider whether "special circumstances" justified a prisoner's failure to exhaust administrative remedies. See Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016) (recognizing that Ross largely abrogates the framework set forth in Giano v. Goord, 380 F.3d 670, 675-76 (2d Cir. 2004) and Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004), which set forth a "special circumstances" exception to the PLRA's exhaustion requirement).

inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Id. at 1858. To be "available," administrative remedies (e.g., grievance procedures) must be "capable of use to obtain some relief for the action complained of." Id. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)). The Court in Ross identified three circumstances in which an administrative remedy may be unavailable:

> First, an administrative remedy may be unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Second, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In other words, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. Third, an administrative remedy may be unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Williams v. Priatno, 829 F.3d 118, 123-24 (2d Cir. 2016) (citing Ross, 136 S. Ct. at 1859-60) (quotation marks and citations omitted).

### 1. Garraway failed to exhaust his remaining claims against Defendants Shumaker, Edger, Brink, Erway, Belz, and Pulsifer (Claims 1-5).

It is undisputed that the only grievance Garraway filed concerning his mattress is the one dated October 4, 2011, in which he sought "a disease free mattress." (See Defendants' Statement of Undisputed Facts ("Defendants' Statement"), Docket No. 47-2, ¶ 78; Plaintiff's Statement of Disputed Facts ("Plaintiff's Statement"), Docket No. 55, ¶ 78.) That grievance pertains only to Defendant Smith, the laundry supervisor. It reads as follows:

> On September 30, 2011, I was diagnosed with a case of skin

9

>fungus and perscribed [sic] medication to treat the uncontrollable and extremely irritating iching [sic]. That was caused by the piss and fecal stained mattress, God knows what else & the inability to change bed linen. I have previously written the State Shop & Laundry to have this mattress changed (during the week of July 4th, 2011) when I was first housed in this cell, equipt [sic] with this mattress, and received "No Reply," and I'm forced to utilize the mattress frequently without linen because the linen is never changed, as in population, or the towels here "one for one," I have to send them to the laundry once a week to be cleaned which takes the entire day to be returned.

(Grievance, Docket No. 47-12, p. 30.)

With this being the only grievance filed, it is undisputed that Garraway never grieved any action (or inaction) taken by Defendants Shumaker, Edger, Brink, Erway, Belz, or Pulsifer. (Defendants' Statement, ¶ 79; Plaintiff's Statement, ¶ 79.) Garraway claims that he informed each of these defendants at one time or another that he had an excrement-soiled mattress that needed to be replaced, yet none of them took any action to replace the mattress or otherwise rectify the situation. But Garraway never filed grievances as to the actions (or inaction) of any of these defendants, and they are not alleged to have been personally involved in any action (or inaction) taken by Defendant Smith.

Garraway's admitted failure to file grievances against Defendants Shumaker, Edger, Brink, Erway, Belz, and Pulsifer requires dismissal of his claims against them. First, the lack of grievances against these defendants deprived the facility of knowledge of Garraway's claims and the opportunity to investigate them during the grievance process. See Woodford, 548 U.S. at 89 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into

10

federal court, and it discourages disregard of the agency's procedures." (citation and quotation marks omitted)).

Second, even assuming that Garraway lodged oral complaints about his mattress with these defendants, such informal communications do not constitute exhaustion. See Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (finding that informal complaints to facility staff does not constitute proper exhaustion).

Third, Garraway's grievance against Defendant Smith does not reference, encompass, or allude to any actions (or inaction) by these defendants. See Turner v. Goord, 376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005) (finding that the filing and exhaustion of *some* grievance does not mean plaintiff can sue "anyone who was in any way connected with the events giving rise to that grievance"); Evans v. Manos, 336 F. Supp. 2d 255, 258 (W.D.N.Y. 2004) (granting summary judgment to defendant on exhaustion grounds where he was not named in grievance nor was there any suggestion in the grievance that defendant was involved in the alleged deprivation); Brewer v. Jones, No. 02 Civ. 3570 (PKC), 2004 WL 235269, at *2 (S.D.N.Y. Feb. 5, 2004) (dismissing claims on exhaustion grounds where "[p]laintiff's grievance did not name any individual defendants other than defendant Jones, and also was silent on the nature of plaintiff's alleged encounters with the other defendants").

Appearing to concede lack of exhaustion, Garraway insists that he failed to file grievances against these defendants due to fear of retaliation, but this Court has already rejected that reason as a valid excuse for failure to exhaust administrative remedies. See Docket No. 60 (relying on Brown v. Napoli, 687 F. Supp. 2d 295, 297 (W.D.N.Y.

2009) ("mere allegation of a generalized fear of retaliation is insufficient") (collecting cases); Snyder v. Whittier, 428 F. App'x 89, 91 (2d Cir. 2011) ("Here, however, [plaintiff] fails to allege any specific threats related to the grievance procedures that would have led any such similarly situated individual to believe that these procedures were unavailable.")). Moreover, Garraway did in fact file a grievance during the relevant period, a fact which undermines his fear-of-retaliation excuse. See Carlson v. Parry, No. 06-CV-6621P, 2013 WL 5354517, at *10 (W.D.N.Y. Sept. 24, 2013). And to the extent Garraway claims that he relied on a custom of informal reporting of issues or was otherwise unfamiliar with grievance procedures, see Plaintiff's Statement, ¶ 79, the record reflects that Garraway was well versed in the grievance process, having filed more than 30 grievances concerning a host of issues at various DOCCS facilities. (See Declaration of Sabrina Vonhagn-King, Docket No. 47-12, ¶ 10 and Exhibit C.)

Consequently, with the undisputed record demonstrating that Garraway failed to exhaust his administrative remedies as to his Eighth Amendment conditions-of-confinement claims against Defendants Shumaker, Edger, Brink, Erway, Belz, and Pulsifer without valid excuse, his claims against them (Claims 1-5) must each be dismissed. See 42 U.S.C. § 1997e (a); Woodford, 548 U.S. at 85 ("Exhaustion is . . . mandatory. Prisoners must now exhaust all 'available' remedies[.]"); Hargrove, 2007 WL 389003, at *5-6 ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983.").

### 2. Garraway failed to properly exhaust his remaining claim against Defendant Smith (Claim 6).

Close examination of the record reveals that Garraway also failed to properly


exhaust his administrative remedies as to Defendant Smith. The New York grievance process requires that inmates make written complaints to the Grievance Clerk within 21 calendar days of the offending occurrence. See 7 N.Y.C.R.R. § 701.5. The 21-day timeframe must be adhered to for proper exhaustion. See Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

Here, it is undisputed that Garraway failed to file any grievance within 21 days of when he was first placed in the cell with the allegedly excrement-soiled mattress on June 28, 2011. The only written grievance Garraway filed is the one against Defendant Smith dated October 4, 2011, which came some four months later. That grievance pertains to Smith's alleged failure to reply to written correspondence that Garraway allegedly sent to her "during the week of July 4, 2011." (Docket No. 47-12, p. 30.) But the only written correspondence in the record between Garraway and Smith in July 2011 is Garraway's July 24, 2011 request to the laundry department for a replacement laundry bag, which is wholly unrelated to any of the claims in this case. (Declaration of Sharon Smith ("Smith Decl."), Docket No. 46-14, ¶ 5 and Exhibit A.) There is no record of any letter from Garraway to the laundry department "during the week of July 4, 2011." Id. But even assuming that Garraway sent a relevant written communication on or about July 4, 2011, that Smith failed to act on, Garraway's October 2011 grievance was still untimely.[7]

---

7 Letters of complaint themselves, of course, do not constitute exhaustion. See Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (informal complaints do not constitute exhaustion); Scott v. Gardner, 287 F. Supp. 2d 477, 488 (S.D.N.Y. 2003) (letters of complaint are not part of the grievance process and do not satisfy the exhaustion requirement).

Garraway's claim against Smith must therefore be dismissed for failure to properly exhaust administrative remedies.

And even if Garraway's October 2011 grievance could be construed as timely grieving the continuing failure to replace his mattress, this Court notes that there is no evidence that Defendant Smith was personally involved in that continuing failure. Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983. See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999). And it is well settled that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The only written correspondence from Garraway to Defendant Smith during the time period in question concerned Garraway's laundry bag, not his mattress, and Garraway concedes that he had no oral communications with Smith during the relevant time period. (See Defendants' Statement, ¶ 38; Plaintiff's Statement, ¶ 38.) Smith was therefore not on notice of or involved in any continuing violation. Consequently, there is insufficient evidence from which Smith could be found to have been personally involved in any continuing failure to replace Garraway's mattress.

Based on the undisputed evidence, the first time Defendant Smith learned of Garraway's concerns about his mattress was when she received his grievance, which she maintains was on October 12, 2011. (Smith Decl. ¶ 3.) Two days later, Smith

responded to Garraway, and Garraway was transferred to a new cell containing a new mattress, thereby resolving the issue. (Smith Decl. ¶ 4.) And even assuming that Smith received Garraway's grievance a few days earlier than October 12, 2011, as Garraway contends, she still acted with reasonable expediency in rectifying the situation. See Wesolowski v. Kamas, 590 F. Supp. 2d 431, 434 (W.D.N.Y. 2008) (granting summary judgment where plaintiff received new mattress within two days of requesting one); McNatt v. Unit Manager Parker, No. 3:99CV1397 AHN, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (noting that "[g]enerally the Eighth Amendment is not violated where the unsanitary conditions are temporary" and finding no Eighth Amendment violation for unsanitary conditions, including "smelly mattresses," that persisted for six days). Consequently, in addition to being unexhausted, Garraway's claim against Smith fails on the merits based on undisputed evidence in the record.

## IV. CONCLUSION

Because Garraway failed to exhaust his administrative remedies, his Eighth Amendment conditions-of-confinement claims cannot proceed to trial and must be dismissed. Defendants' motion in limine seeking dismissal on exhaustion grounds will therefore be granted, and the remaining portions of the parties' motions in limine will be denied as moot.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion in Limine (Docket No. 134) is GRANTED in part and DENIED AS MOOT in part.

FURTHER, that Plaintiff's Motion in Limine (Docket No. 135) is DENIED AS MOOT.

FURTHER, that the remaining claims in this case are DISMISSED for failure to properly exhaust administrative remedies.

FURTHER, that the status conference scheduled for January 31, 2020, and all future trial-related appearances are CANCELED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated: January 30, 2020
      Buffalo, New York

                                                s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge